J-S06045-16

2016 PA Super 195

COMMONWEALTH OF PENNSYLVANIA,     IN THE SUPERIOR COURT OF
PENNSYLVANIA

Appellee

v.

CHAD D. BENNER,

Appellant     No. 40 MDA 2015

Appeal from the Order Entered November 21, 2014
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0003805-2010

BEFORE:  PANELLA, J., MUNDY, J., AND STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:     **FILED AUGUST 31, 2016**

Appellant Chad D. Benner files this *pro se* appeal from the order entered by the Court of Common Pleas of Luzerne County denying Appellant's petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

In 2010, Appellant was charged in connection with allegations of sexual assault made by C.H., the younger sister of Appellant's former girlfriend.  The following factual background was developed at a jury trial held on April 13, 2011:  C.H. testified that she first had contact with Appellant when her sister had moved into an apartment with Appellant, which occurred in July 2002.  C.H. began to visit the apartment and babysit her sister's son while her sister and Appellant were at work.  At that time, Appellant was twenty-nine and C.H. was fourteen.

*Former Justice specially assigned to the Superior Court.

C.H. testified that her relationship with Appellant became increasingly more uncomfortable as time passed. She indicated that first, Appellant would compliment her looks and tell her that he would like to kiss and touch her. Although C.H. indicated that she told Appellant to stop and would not respond to his advances, Appellant began to show her physical affection like extended hugs and back rubs. C.H. recalled a time where Appellant came up behind her, wrapped his arms around her waist, and kissed her neck. As time passed, Appellant's behavior progressed to include sexual advances, including touching C.H.'s breasts and thighs. C.H. would tell Appellant to stop this behavior and tried to leave or move to another room. C.H. revealed she did not tell her sister as she was afraid her sister would be disgusted and ashamed of her.

C.H. remembered that she was fourteen years old the first time Appellant forced her to have oral sex. She recalled that she was laying on the couch in her sister's apartment when Appellant unexpectedly sat on her chest, pinned her down, and forced his penis into her mouth. C.H. panicked and struggled to get free, but was unable to get away before Appellant ejaculated. She did not remember what month this assault occurred, but indicated there were additional times where Appellant pressured her to give him oral sex or to allow him to perform oral sex on her. As time went on, C.H. stopped struggling when Appellant would approach her to have sexual contact as he would tell her that she was pretty and seemed to show romantic feelings for her.

Appellant continued the sexual assaults on occasions when he could be alone with C.H.; the sexual abuse only stopped when C.H.'s sister broke up with Appellant for unrelated reasons in September 2004. Although the assaults began in 2002, C.H. refrained from telling anyone about the abuse for several years. In 2006, C.H. first shared the details of her sexual contact with her then boyfriend, who is now her husband. In 2008, C.H. revealed the abuse to her parents, who contacted authorities.

In the criminal information, the Commonwealth alleged that Appellant committed the relevant crimes between July 2002 and September 2004. On April 14, 2011, a jury convicted Appellant of Involuntary Deviate Sexual Intercourse ("IDSI") and three counts of indecent assault. The trial court sentenced Appellant to a mandatory minimum sentence of ten to twenty years' incarceration for the IDSI conviction pursuant to 42 Pa.C.S. § 9714, based on Appellant's prior sodomy conviction. The trial court also sentenced Appellant to consecutive terms of one to two years imprisonment for each of the indecent assault convictions, rendering an aggregate sentence of thirteen to twenty-six years' imprisonment. Appellant filed a post-sentence motion which the trial court subsequently denied.

On September 13, 2012, this Court vacated Appellant's sentence, agreeing that there was insufficient evidence to support one of the indecent assault convictions. Upon remand, Appellant was resentenced by the trial court on September 12, 2013, to an aggregate sentence of twelve to twenty-four years imprisonment with credit for time served.

On March 31, 2014, Appellant filed the instant *pro se* PCRA petition, claiming, *inter alia*, that he was denied due process as the Commonwealth failed to prove the commission of offenses charged upon a date fixed with reasonable certainty as dictated by **Commonwealth v. Devlin**, 460 Pa. 508, 333 A.2d 888 (1975). The PCRA court appointed counsel, Jeffrey Yelen, Esq., who filed a brief in support of Appellant's *pro se* petition. After a hearing, the PCRA court filed an order on November 21, 2014, denying Appellant's petition.

On December 18, 2014, Appellant filed a *pro se* notice of appeal. Appellant also filed a motion with the PCRA court to reconsider the dismissal of his petition, arguing that PCRA counsel was ineffective in failing to adequately argue his claim pursuant to **Devlin**. Appellant asked that Atty. Yelen withdraw his representation and requested the appointment of "competent counsel" or permission to file a *pro se* appeal.

On December 22, 2014, Atty. Yelen filed a notice of appeal on Appellant's behalf along with a motion for the appointment of conflict counsel. The PCRA court allowed Atty. Yelen to withdraw and appointed substitute counsel Mary V. Deady, Esq., who filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On May 22, 2015, Appellant filed an Application for Relief in this Court, seeking to proceed *pro se*, claiming Atty. Deady ignored his request to preserve his challenge under **Devlin**. On June 9, 2015, this Court issued a *per curiam* order, directing the PCRA Court to hold a hearing pursuant to

*Commonwealth v. Grazier*, 552 Pa. 9, 713 A.2d 81 (1998) to determine whether Appellant's waiver of counsel was knowing, intelligent, and voluntary.

On June 17, 2015, the PCRA court filed an order and opinion responding to Appellant's counseled 1925(b) statement. The PCRA court did not address Petitioner's desired claim under *Devlin*, but did find that trial counsel had a reasonable basis for not admitting the disputed letters to challenge C.H.'s motive as Appellant would have opened the door to a discussion of his prior conviction for sexual assault. The PCRA court then transmitted the certified record to this Court.

On June 22, 2015, the PCRA court held a *Grazier* hearing and determined that Appellant understood that he was waiving his right to representation by counsel and acknowledged he will be required to raise his potential claims in a timely manner complying with all procedural rules. Trial Court Order, 6/23/15, at 1. Accordingly, the PCRA court granted Appellant's request to proceed *pro se*.

Appellant filed a brief in this Court, reiterating his claim that PCRA counsel was ineffective in failing to argue that the Commonwealth was required to prove with reasonable certainty the date the offense occurred pursuant to the Supreme Court's decision in *Devlin*. Although the PCRA court conducted a *Grazier* hearing and granted Appellant the right to proceed *pro se*, its previously filed opinion did not address Appellant's claim based on *Devlin*. Accordingly, we remanded to the PCRA court for the

preparation of a supplemental opinion addressing this claim. After remand, the parties have submitted additional briefs to address the claim Appellant wishes to raise and this appeal is ready for disposition.

Our standard of review regarding an order dismissing a petition under the PCRA is as follows:

> This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

*Commonwealth v. Perry*, 128 A.3d 1285, 1289 (Pa. Super. 2015) (citations omitted). In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in Section 9543(a)(2), which includes the ineffective assistance of counsel. 42 Pa.C.S. § 9543(a)(2)(i).

"It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121, 132 (2012) (citing *Strickland v. Washington*, 466 U.S. 688, 687-91 (1984)). To prevail on

an ineffectiveness claim, the petitioner has the burden to prove that "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Commonwealth v. Sneed*, 616 Pa. 1, 18, 45 A.3d 1096, 1106 (2012) (quoting *Commonwealth v. Pierce*, 567 Pa. 186, 203, 786 A.2d 203, 213 (2001)). The failure to satisfy any one of the prongs will cause the entire claim to fail. *Id*.

As noted above, Appellant's first claim is that both direct appeal and PCRA counsel provided ineffective assistance in failing to argue that Appellant was not properly informed of the charges lodged against him pursuant to *Devlin*. Pointing to the criminal complaint in which the Commonwealth charged him with IDSI and Indecent Assault for acts committed between July 2002 through September 2004, Appellant contends that counsel should have argued that dates of the offenses were not alleged with sufficient certainty. We disagree as this claim has no arguable merit.

In *Devlin*, our Supreme Court held that due process mandates that the prosecution must fix the date of the commission of the offense with reasonable certainty. *Devlin*, 460 Pa. at 513, 333 A.2d at 890-91. In that case, the prosecution charged the defendant with one count of IDSI for the sexual assault of an intellectually disabled individual that allegedly occurred at some point during a fourteen-month period. The Supreme Court concluded that the defendant's right to due process was violated as the

Commonwealth's broad timeframe in which the offense occurred substantially denied the defendant the opportunity to present an alibi defense and to attack the victim's credibility.

Nevertheless, the Supreme Court acknowledged that it was not appropriate to fix a bright line rule but allowed for flexibility in this determination:

> Here, as elsewhere, [t]he pattern of due process is picked out in the facts and circumstances of each case. Due process is not reducible to a mathematical formula. Therefore, we cannot enunciate the exact degree of specificity in the proof of the date of a crime which will be required or the amount of latitude which will be acceptable. Certainly the Commonwealth need not always prove a single specific date of the crime. Any leeway permissible would vary with the nature of the crime and the age and condition of the victim, balanced against the rights of the accused.

*Id*. at 515-16, 333 A.2d at 892 (footnote and citations omitted).

This case can be distinguished from *Devlin* as that case only involved one single instance of sexual assault, whereas in this case Appellant was charged with an ongoing pattern of sexual abuse that spanned several months. Appellant took advantage of C.H.'s age and exploited her insecurity to groom her for sexual contact by complimenting her appearance and showing physical affection through extended embraces and back rubs. Appellant was able to escalate his behavior to fondle Complainant's breasts and force her to give him oral sex while he pinned her down so she could not escape. Through his manipulation, Appellant subsequently pressured C.H. to engage oral sex with him on multiple occasions. "[T]he Commonwealth

must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct." ***Commonwealth v. Groff***, 548 A.2d 1237, 1242 (Pa. Super. 1988).

More recently, in ***Commonwealth v. G.D.M, Sr.***, 926 A.2d 984, 990 (Pa. Super. 2007), we reaffirmed that "the due process concerns of ***Devlin*** are satisfied where the victim ... can at least fix the times when an ongoing course of molestation commenced and when it ceased." In the present case, C.H. was able to testify that Appellant subjected her to an ongoing pattern of molestation that began when she was fourteen and ended when she was sixteen. C.H. clearly confirmed that Appellant first began forcing her to have oral sex when she was fourteen years old. Appellant continued to sexually assault C.H. until he no longer had access to her when C.H.'s sister ended her relationship with Appellant in September 2004.

Moreover, at trial, the Commonwealth presented evidence to narrow the timeframe during which Appellant's course of sexual assault began. The prosecutor introduced the testimony of C.H.'s sister, who testified that she began living with Appellant in July 2002. Appellant's advances toward C.H. quickly escalated from hugs and back rubs to inappropriate touching and forcible oral sex when C.H. was still fourteen years old. C.H. clearly testified that she remembered her first sexual encounter with Appellant occurred when she was fourteen. As C.H. turned fifteen on January 6, 2003, the Commonwealth clarified that Appellant committed IDSI and indecent assault

with fourteen-year-old C.H. within an approximate six-month period (July 2002 to early January 2003).

Accordingly, we conclude Appellant was not deprived due process by the Commonwealth's inability to fix the time of the offenses that occurred in a continuous course of conduct with greater specificity. Counsel cannot be deemed ineffective in failing to pursue a meritless claim. *Groff*, 548 A.2d at 1243. Thus, we reject Appellant's claim that he was denied effective assistance of counsel when his attorneys refused to raise a claim under *Devlin*.

Appellant's second claim is that direct appeal and PCRA counsel were ineffective in failing to pursue Appellant's claim that trial counsel should have thoroughly cross-examined C.H.'s sister with respect to letters she wrote to Appellant while he was in jail. Appellant alleges that "information found in the content of these letters in question could have reasonably supported a defense allegation that [C.H.] was charging [A]ppellant with these offenses to help her sister obtain full custody of a child that [A]ppellant fathered with [C.H.'s sister]." Appellant's Brief, at 27.

At the PCRA hearing, Appellant's trial counsel, Atty. Jonathan Donovan testified that he was aware of the letters and indicated to Appellant that the correspondence did not show that C.H. was willing to fabricate false allegations of sexual assault to help her sister deprive Appellant of custody of his child. Atty. Donovan indicated that he was also concerned about introducing the letters into evidence, as the writings contained references to

- 10 -

the fact that Appellant was serving a term of incarceration for a prior convictions of sodomy and unlawful contact with a child. Fearing that this information would undermine Appellant's defense, Atty. Donovan made a strategic decision not to cross-examine the witness as to the contents of the letter as to prevent her from testifying that she wished to keep her son away from Appellant due to his prior convictions for improper sexual contact with a child. As Appellant failed to show that trial counsel lacked a reasonable basis for his strategy, his ineffectiveness claim must fail.

Accordingly, we conclude that the PCRA court did not err in rejecting Appellant's ineffectiveness claims and dismissing his petition.

Order affirmed.

Judge Mundy did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2016

- 11 -